**SO ORDERED.**

**SIGNED this 16 day of October, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**NEW BERN DIVISION**

IN RE:

**MARLYN JAMES EDINGER,**                    **CHAPTER 13**
**MARY ANN EDINGER**                          **CASE NO. 14-01966-5-RDD**

      **DEBTOR**

**ORDER OVERRULING OBJECTION TO CLAIM**

Pending before the Court is Objection to Claim Number 13 of Cabel McKinley (the "Objection") filed by Marlyn James Edinger and Mary Ann Edinger (the "Debtors") on September 2, 2014 and the Response in Opposition to the Objection filed on behalf of the Cabel McKinley on September 9, 2014 (the "Response"). The Court conducted a hearing on October 2, 2014, in New Bern, North Carolina to consider the Objection and the Response. The Bankruptcy Court has the authority to hear and decide the issue of dischargeability by way of the Objection, rather than an adversary proceeding by way of stipulation of the parties. The hearing of the Objection is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

The Debtors filed a petition for relief pursuant to Chapter 13 of the United States Bankruptcy Code (the "Code") on April 4, 2014. Cabel McKinley, the female Debtor's ex-husband, filed a proof of claim in the Debtors bankruptcy case in the amount of $25,822.50 which resulted from a domestic

action in Craven County Court, North Carolina District Court Division, bearing File No.: 09-CvD-793 (the "Domestic Action"). The Domestic Action involved child custody, visitation, child support; contempt for violation of an order related to child custody and visitation; and the upward modification of child support. Cabel McKinley claims that the attorney's fees generated by the above mentioned case are domestic support obligations owed by the female debtor awarded pursuant to NCGS 50:13.1 et seq and 50:13.6 and are priority and non-dischargeable pursuant to U.S.C. § 507(a)(3)(5) and 523 (a)(3)(15). In the Debtors' Schedule F, the Debtors listed Cabel McKinley as a Creditor holding an unsecured Nonpriority Claim in the amount of $25,822.50. The Objection alleges that the claim is not a domestic support obligation and is therefore a dischargeable debt.

## STATEMENT OF FACTS

Mary Ann Edinger (formerly Mary Ann McKinley), the female debtor, married Cabel McKinley in 1995. Cabel McKinley filed for an absolute divorce from the female debtor in the Harnett County District Court on February 8, 2011. Subsequent to that filing, a temporary custody order was entered on July 14, 2008 which awarded primary physical custody of the three minor children from the marriage, Cabel McKinley, Jr. ("CJ"), Joey McKinley, and Rebekah McKinley to the female debtor. Secondary physical custody and regular visitation was awarded to Cabel McKinley.

In January 2008, Cabel McKinley returned from his first deployment in Afghanistan with the United States Army. The female debtor began a destructive and deplorable path to prevent the three minor children from having a meaningful relationship with their father. The Honorable Paul Quinn, District Court Judge Presiding, details the filthy living conditions the three minor children were subjected to by the female debtor. In his sixty-three page Order entered on June 15, 2011 (the "June 5, 2011 Order") Judge Quinn details, what he called deplorable, indefensible and inexcusable

behavior by the female debtor and her utter disregard for the welfare of her children. Judge Quinn further detailed the egregious conduct of the female debtor in a second Order issued on December 5, 2011 (the "December 5, 2011 Order") in which he awarded attorney's fees to Cabel McKinley.

This Court will detail some of the findings of fact presented at the October 2, 2014 hearing. First, the female debtor caused her children to live in deplorable and disgusting dwelling conditions, characterized by garbage, clutter, and filth. Judge Quinn stated in part that, "[t]he dining area was full of garbage, old food, dirty dishes, and assorted junk...the living room was cluttered beyond description. In addition, the defendant took in stray cats while the Plaintiff was gone to the point she had, based on her own testimony, fifteen to twenty stray cats, along with other animals living in this residence with the minor children. The smell of animals and animal urine was overwhelming." *McKinley v. McKinley,* No. 09-CVD-793 (N.C.Dist.Ct. Jun. 15, 2011) at 11. The female debtor also maintained at least fourteen dogs in the residence. *McKinley* at 38. After a "jury view" that was ordered during the trial of the Domestic Action, Judge Quinn said, "[t]he Court does not have sufficient words to describe the horrific and deplorable condition of the residence that [the female debtor] has provided for these minor children, which is unsafe, unhealthy and extremely adverse to their welfare." *Id.*

Judge Quinn also makes note of the children's overall hygiene detailing that the three minor children were "dirty, dishelved - looking and unkempt" and "smelled of animal urine to the point that it would sometimes gag the Plaintiff and makes his eyes water." *Id* at 14. Aside from their appearance, the minor children's health was also neglected. For example, Rebekah, who was five years old at the time, was diagnosed with ten areas of decay in her mouth. She complained of pain repeatedly to the female debtor who allegedly scheduled appointments with a dentist. The female debtor then failed to bring her child to the scheduled appointments. Subsequently, Judge Quinn notes,

3

"Rebekah had an emergency dental appointment as a result of a toothache from a grossly decayed tooth that had erupted." *Id* at 40. Rebekah's permanent molar had to be extracted. Less than a year later, Rebekah once again suffered from a decayed and aching tooth which resulted in the extraction of another permanent molar. Judge Quinn stated that the female debtor's "neglect of the minor children's dental hygiene is indefensible and adverse to their welfare." *Id* at 41.

The female debtor also displayed outrageous behavior in the presence of the minor children which is particularly shocking to this Court. For example, in June 2008, during a visitation exchange between Cabel McKinley and the female debtor, Patricia McKinley, the children's maternal grandmother, was physically attacked by the female debtor. In the presence of the minor children, the female debtor approached Patricia McKinley, cursed at her, and spit in her face. The female debtor then grabbed Patricia McKinley by her hair, jerked her around, and spit in her face again. Judge Quinn stated, "this vicious and unwarranted assault took place in the presence and full view of the minor children. [The female debtor's] actions were irresponsible and indefensible. Assaulting the children's grandmother in front of the minor children showed a complete and utter disregard by [the female debtor] for the welfare of the minor children." *Id* at 13. The other instances of appalling behavior exhibited by the female debtor in the presence of her minor children are too numerous for this Court to recount here.

In addition, the female debtor attempted to misuse law enforcement numerous times while Cabel McKinley was exercising his right under court order to have visitation with his children. Further, the instances of the female debtor's manipulation of her minor children to prevent the children from having a loving relationship with Cabel McKinley are troublesome. Judge Quinn noted that "[Cabel McKinley] and minor children have a very strong, loving and close bond and relationship, in spite of the [female debtor's] indefensible, unwarranted and contemptuous efforts to

4

obliterate the children's relationship with their father." *Id* at 50. Judge Quinn went so far as to say that these children, "needed to be rescued from the [female debtor]." *Id* at 51.

The June 15, 2011 Order granted primary and physical care, custody and control of the children to Cabel McKinley and allowed the female debtor visitation only to occur in the home of her mother. *Id* at 56, 61. Additionally, the female debtor was ordered to pay child support and Cabel McKinley's attorneys fees in the sum of $7,200.00. The female debtor's obligation to pay the attorney's fees was suspended provided that she comply with the terms of the June 5, 2011 Order.

On September 14, 2011 Cabel McKinley filed a motion for an Order to Show Cause to hold the female debtor in contempt of Judge Quinn's June 15, 2011 Order. This matter was heard by Judge Quinn who issued the December 5, 2011 Order.

In the December 5, 2011 Order, Judge Quinn found that the female debtor had "embarked upon a course of conduct wherein she has attempted to undermine and interfere with [Cabel McKinley's] custody of the minor children by encouraging them to do and say things to try and regain custody of the children..." *McKinley v. McKinley,* No. 09-CvD-793 (N.C.Dist.Ct Dec. 5, 2011) at 6. Some of these things included encouraging C.J. to assault his father. Judge Quinn found this request by the female debtor that her son assault his father and tell lies about him "to be irresponsible, egregious, and indefensible." *Id* at 7. The female debtor also continued on her previous path of "irresponsibly misusing and abusing law enforcement in an attempt to harass [Cabel McKinley] and interfere with his relationship with the minor children." *Id* at 8. Judge Quinn noted that the female debtor continued in " her plan, design and scheme to do whatever it takes to regain the custody of the children." *Id* at 12.

The female debtor went so far as to have her son Joey taken to the emergency room to prevent the child from returning to the custody of Cabel McKinley. Joey, under the instruction of the female

5

debtor, indicated to medical staff that he wanted to hurt himself which resulted in the minor child being involuntarily committed to Brynn Marr Hospital in Jacksonville, North Carolina, without the knowledge or consent of Cabel McKinley. *Id* at 14-15.  Judge Quinn stated that the female debtor's "willingness to involve her children in the furtherance of her goal resulted in this poor little boy being traumatized, which is terrible and appalling." *Id* at 16.

Judge Quinn summarized the actions of the female debtor in his December 5, 2011 order stating:

> "It is clear to this Court that the minor children love their mother, in spite of the emotional abuse she inflicts upon them by talking to them about this court case, by encouraging them to make false statements about their father, by misusing law enforcement and the Department of Social Services, by encouraging C.J. to assault his father and reporting him for stealing his cell phone, by commencing action that resulted in the involuntary commitment of their son, by encouraging Joey to have a relationship with a 17-year-old girl he met at Brynn Marr, by encouraging C.J.'s relationship with a girl who he is actively trying to get pregnant, and by otherwise involving the minor children in her efforts to sabotage [Cabel McKinley's] primary custody of the children and alienate their love and affection for him..."

 *Id* at 20.

Judge Quinn found that the behavior of the female debtor adversely affects the welfare of the minor children, so much so that it "warrants a termination of the [female debtor's] visitation and contact with the minor children." *Id* at 21.

In stripping the female debtor of her right to visitation and contact with the children, Judge Quinn stated "[the female debtor's] willful disobedience of [the June 15, 2011] Order has defeated, impaired, impeded and prejudiced the rights and remedies of [ Cabel McKinley]. [The female debtor's] violations of [the June 15, 2011] Order have harmed the parties' minor children...which is adverse to their welfare." *Id* at 22.  Cabel McKinley was awarded attorney's fees in the amount of $18,622.50 which were to be paid by the female debtor by reason of her acts and conduct..." *Id* at 23.  Further, fees were to be paid in the amount of $7,200.00 resulting from the June 15, 2011 Order. The total amount

to be paid to Cabel McKinley by the female debtor is "the total sum $25,822.50 ($7,200 for prior contempt plus $18,622.50 for current contempt)." *Id* at 24.

On February 3, 2013, an Order was entered by The Honorable Karen Alexander regarding the female debtor's Motion and Notice of Hearing for Modification of Child Support Order filed on October 16, 2013 (the "February 3, 2013 Order"). Judge Alexander reviewed and explained the current status of the children and Cabel McKinley's financial situation. She stated that Cabel McKinley, " has had to spend a great deal of time and expense in helping the minor children overcome the abuse of the [female debtor] as identified by Judge Quinn, through working with therapists and the children's schools, also to the family's financial detriment." *McKinley v. McKinley*, No. 09-CvD -793 (N.C.Dist.Ct. Feb. 3, 2013) at 8. Judge Alexander noted that Cabel McKinley had to turn down a mandatory deployment of his unit in order to provide continuity and stability "for his children's health, education, and welfare." *Id* at 7. As a result he was chastised, passed over for a promotion, and suffered a loss of a substantial increase in income. Judge Alexander detailed the financial struggles that Cabel McKinley and his family face due in large part to the defendant's actions.

As to the female debtor's failure to pay the attorneys fees of $25,822.50 as Ordered by Judge Quinn, Judge Alexander says this:

> "The [female debtor] has failed to pay the aforementioned attorney's fees as ordered by Judge Quinn, which further contributes to [Cabel McKinley's] current financial hardship, which has been directly caused by the [female debtor's] neglect of the parties' minor children and her willful and contemptuous conduct as found by Judge Quinn as aforesaid." *Id* at 10.
> "The [female debtor's] actions found to be egregious and reprehensible by Judge Quinn in his prior Orders, which are incorporated herein by reference, have contributed to and have been a proximate cause of [Cabel McKinley's] financial hardship, thereby creating a financial shortfall with respect to [Cabel McKinley] being able to meet the needs and expenses of the parties' children..."

*Id* at 12.

## DISCUSSION

The female debtor and her current husband jointly filed a petition for relief pursuant to Chapter 13 of the Code on April 4, 2014. Cabel McKinley timely filed a proof of claim in the Debtors' bankruptcy case in the amount of $25,822.50 for attorney's fees generated by the Domestic Action (the "Claim"). Cabel McKinley claims that the fees are a domestic support obligation and are priority and non-dischargeable pursuant to U.S.C. § 507(a)(1)(A) and 523 (a)(3)(15). The Debtors filed the Objection to Cabel McKinley's claim, alleging that the claim is not a domestic support obligation and therefore, this claim is dischargeable.

Section 101(14A) of the United States Bankruptcy Code defines a "domestic support obligation" as a debt that is:

> (A) owed to or recoverable by-
>     (I) a spouse, [or] former spouse ...
> (B) in the nature of alimony, maintenance, or support ... of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>     (I) a separation agreement, divorce decree, or property settlement agreement ... and
> (D) not assigned to a nongovernmental entity....

This Court has held that the question of whether the Claim is a domestic support obligation "turns on whether the claim is in the nature of alimony, maintenance or support." *In re Baker,* 2012 WL 6186683 at *4 (Bankr. E.D.N.C. Dec. 12, 2012)*; See In re Sewell,* 2008 WL 8130029 at *3 (Bankr.E.D.N.C. Jan. 3, 2008). Further, "the burden of showing that a claim is in the nature of support is on the claimant." *Id* at *4*; See* In re Macys, 115 B.R. 883, 890 (Bankr. E. D. Va. 1990); *See also Tilley v. Jessee*, 789 F.2d 1074, 1077 (4th Cir.1986). Therefore, the burden is on Cabel McKinley to show that the Claim is in the nature of alimony, maintenance, or support, and thus, non-dischargeable.

Section 523 (a)(5) of the Code provides:

8

>   (a) A discharge...does not discharge an individual debtor from any debt–
>
>>   (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by governmental unit, or property settlement agreement, but not to the extent that–
>
>   (B) such debt includes a liability designated as alimony, maintenance, or support, unless such a liability is actually in the nature of alimony, maintenance, or support.

With regard to the question of whether the award of attorney's fees in the nature of support, several courts have held that fees awarded to an attorney representing the best interests of the children in divorce litigation are in the nature of support. *See, e.g., In re Blaemire*, 229 B.R. 665, 668 (Bankr.D.Md.1999); *In re Soffee*, 337 B.R. 837, 840 (Bankr.E.D.Va.2004); see also *In re Maddigan*, 312 F.3d 589, 594 (2d Cir.2002) (custody dispute).

Additionally, this Court has held that when the claim arises from a court order, as it does in the present case, "the issue is whether the court issuing the order intended for the obligation to be in the nature of support." *In re Baker*, 2012 WL 6186683 *4 (Bankr. E.D.N.C. Dec. 12, 2012); See *In re Bowen*, 2010 Bankr.LEXIS 1520, at *14, 2010 WL 1855871 (Bankr.E.D.N.C. May 10, 2010) (considering the findings made by the state court judge to determine whether that judge intended for the obligation arising from the court order to be in the nature of support); *In re Bennett*, 2009 Bankr.LEXIS 4398, at *4–7 (Bankr.E.D.N.C. February 9, 2009) (determining whether the state court intended for a debt to be in the nature of support when the debt arose from a court order). This Court held in Baker that, "to determine the parties' intention, or the court's intention in cases where the claim arose from a court order, the bankruptcy court should consider the terms of the agreement or court order, but "labels given to the obligations are not controlling." *Baker* at 4; *Alston*, 2008 Bankr.LEXIS 2660, at *5, 2008 WL 3981811; *see also Tilley,* 789 F.2d at 1077–78; *Sewell,* 2008 Bankr.LEXIS 4025, at *4, 2008 WL 8130029.

In reviewing the Orders as entered by Judge Quinn and Judge Alexander, this Court finds that it was the intention of the state court that the award of attorney's fees to Cabel McKinley to be in the nature of maintenance and support and in the best interests of the children.

First, actual monetary child support was awarded to Cabel McKinley. The June 15, 2011 Order of Judge Quinn provided that the female debtor pay $450.00 per month to Cabel McKinley for the support of the children.

Second, Cabel McKinley was awarded attorney's fees for expenses incurred based on the female debtor's wrongful conduct. The December 5, 2011 Order of Judge Quinn provided that the female debtor pay $25,822.50 for legal expenses that Cabel McKinley would not have otherwise had to incur but for the bad acts of the female debtor, and for which Cabel McKinley had insufficient means to pay.

Third, the February 3, 2013 Order by Judge Alexander provided for an upward adjustment in the amount of child support to Cabel McKinley to $500.00 per month. In addition, Judge Alexander states that the actions of the female debtor were "found to be egregious and reprehensible by Judge Quinn. . . have contributed to and have been a proximate cause of [Cabel McKinley's] financial hardship, thereby creating a financial shortfall with respect to [Cabel McKinley] being able to meet the needs and expenses of the parties' children..." *Id* at 12. The December 5, 2011 Order which awarded the attorney's fees to Cabel McKinley states that "as a result of the [female debtor's] wrongful conduct with respect to her willful violations of Judge Quinn's Orders, as referenced above, [Cabel McKinley] has had to incur legal expenses, which he would not have had to incur but for the wilful contempt of the [female debtor], and for which he has insufficient means to pay." *McKinley v. McKinley,* No. 09-CvD-793 (N.C.Dist.Ct. Dec. 5, 2011) at 22.

It is clear to this Court that the intent of the state court in the December 5, 2011 Order was to provide the payment of attorney's fees as financial support to Cabel McKinley for the benefit of the children. This is confirmed in the language used to describe the payment of attorney's fees and the debtor's failure to pay said fees in the February 3, 2011 Order. Further, Cabel McKinley instituted the custody litigation which generated the awarded attorney's fees because the welfare of the children was in peril and that he would not have had to do so but for the wrongful conduct of the female debtor. This Court finds that Cabel McKinley took these actions to protect his children and to obtain child support from the female debtor. Therefore, this Court finds that the award of attorney's fees to Cabel McKinley is in the nature of support for what was in the best interests of the children and therefore is a domestic support obligation pursuant to § 101(14A). This Court finds that the Cabel McKinley has met his burden to show that the Claim is in the nature of support both by representations made and evidence presented at the October 2, 2014 hearing.

Further, this Court finds that the identity of the payee, which is Cabel McKinley's attorney Alfred Ward, has no effect on the dischargeability of the debt in this case. The court in *Blaemire* held that, the identity of the payee is not determinative of whether the debt is dischargeable. *In re Blaemire*, 229 B.R. 665, 668 (Bankr. D. Md. 1999; See In re *Silansky*, 897 F. 2d 743 (CA4 1990). Therefore, the fact that the attorney's fees are payable to Cabel McKinley's attorney is of no consequence to the determination of whether the award is in the nature of support.

This Court finds that as a domestic support obligation, the award of attorney's fees to Cabel McKinley is a non-dischargeable debt pursuant to 11 U.S.C. § 523 (a)(5). The obligation arose from the June 5, 2011, the December 5, 2014, and the February 3, 2013 Orders and said Orders expressed the intention that obligation was in the nature of support and maintenance for the benefit and best interests of the children. As a domestic support obligation, the Court finds that the Claim is entitled to first priority

status and it must be paid for in full through the Debtors' plan before the plan can be confirmed. *See* 11 U.S.C. § 507 (a)(1)(A) (stating a domestic support obligation that is an allowed claim is entitled to first priority status); *see also* 11 U.S.C. § 1322(a)(2) (stating that the plan shall provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 unless the holder of a particular claim agrees to a different treatment of such claim).

THEREFORE, the Debtor's Objection to Cabel McKinley's proof of claim is **OVERRULED**. The Claim of Cabel McKinley for attorney's fees in the amount of twenty-five thousand, eight hundred and twenty-two dollars and fifty cents ($25,822.50) is held to be a domestic support obligation and is therefore **NON-DISCHARGEABLE**.  The Claim of Cabel McKinley is therefore **ALLOWED**.

**SO ORDERED.**

**END OF DOCUMENT**